THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAMUEL HOFFMAN, Plaintiff in Error.

*Opinion filed February 24, 1928—Rehearing denied April 5, 1928.*

1. CRIMINAL LAW—*when defendant is not denied right to have admissibility of confession determined by court as a preliminary question.* The right of a defendant to have the court hear, out of the presence of the jury, evidence of the circumstances under which a confession was made, in order to determine its admissibility against him, is not denied where the abstract shows that on objection to the evidence of two witnesses in regard to the confession, the court in each instance examined the witness privately with defendant's counsel and the State's attorney and suggested to defendant's counsel that to save time he might have others examined privately, and that defendant's counsel declined the offer and allowed the witnesses to testify without objection.

2. SAME—*when defendant cannot complain of evidence of another offense.* In a prosecution for rape, prejudicial error is not committed where police officers, testifying to an alleged confession of the defendant, are allowed to state that the defendant, in the course of the same conversation, admitted having raped other women, where the court promptly sustains objections to every other reference to other offenses and where the defendant's counsel himself goes into the same subject by inquiring of defendant on the witness stand if he had raped any other women.

3. SAME—*when improper argument of State's attorney is not shown to have been prejudicial.* The State's attorney, in his argument, should not refer to the fact that the State could not go into detail about other charges against the defendant because the law would not permit it; but the improper remark is not shown to have been prejudicial where the conviction is sustained by the defendant's confession properly admitted in evidence and where the verdict fixes a minimum penalty.

4. SAME—*when verdict will not be set aside on evidence.* The verdict of a jury in a criminal case is not conclusive that the evidence was sufficient to authorize the verdict, but where the evidence is conflicting, a reviewing court will not substitute its judgment for the verdict of the jury, whose province it is to determine the weight and credit to be given the testimony of witnesses.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

GEORGE W. SPRENGER, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, HENRY E. PRATT, State's Attorney, and ROY D. JOHNSON, (FREDERICK F. BECKMAN, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Plaintiff in error, Samuel Hoffman, (hereafter called defendant,) was convicted in the circuit court of Peoria county under an indictment charging him with rape upon Amanda Trumbo, a colored woman. His age was found to be twenty-eight years, and his punishment was fixed at one year in the penitentiary. After overruling a motion for a new trial and in arrest of judgment the court rendered judgment on the verdict, and defendant has sued out this writ of error. The crime was committed the night of April 1, 1927.

The errors complained of are: (1) That the court erred on the trial in not granting defendant a hearing upon the admissibility of alleged confessions testified to by the police officers, and a ruling on whether they were made

voluntarily or because of fear or hope of reward; (2) the court erred in permitting the alleged confessions to go to the jury; (3) the court erred in admitting incompetent evidence on the part of the People in rebuttal; (4) the court erred in refusing to strike from the record all testimony with reference to the alleged confessions; (5) the court erred in permitting the People to inject into the record the commission of outrages upon other women and in permitting the prosecutor in his opening statements to tell the jury the confessions he expected to prove; (6) the State's attorney in his closing argument made inflammatory statements about crimes against other women; (7) the evidence was not sufficient to warrant a conviction; (8) the court erred in giving instructions for the People.

The State proved defendant confessed the commission of the crime. Defendant testified he was induced to make the confessions by promises of the police officers that if he would do so he would be turned loose. It is urged by defendant that the confessions were incompetent; that the court erred in denying defendant's request that the testimony of the alleged confessions be heard by the court out of the presence of the jury, for the purpose of determining whether they were competent to be admitted in evidence.

The prosecuting witness was the first witness called by the People. She described the assault and the crime, and when asked to tell what defendant said when he was brought into her presence next day after his arrest defendant objected, and the court said he would let counsel find out if there was any force or anything of that character used to obtain the confessions, if that was what defendant's counsel meant. Counsel said he would like the examination to be before the court, not in the presence of the jury. The court thereupon stated to defendant's counsel that he would permit him, the State's attorney and the witness to retire to the judge's chambers and examine the witness. Defendant's counsel, the State's attorney, the wit-

ness and the official court reporter retired to the judge's chambers without any objection on the part of defendant's counsel, and the witness was there examined out of the presence of the court and jury, and after the witness had made her statement the parties returned to the court room and the witness then testified in the presence of the jury. No objection was made by defendant's counsel to her testifying that defendant said when brought into her presence she was the woman.

Police officer Montgomery, who with policeman Moran made the arrest on the 19th of April, was asked to tell what defendant told him and Moran the next day after he was locked up. Defendant's counsel again objected, and said he desired to interrogate the witness on any admissions he was going to testify to. The court told him if he wanted to take him into the other room and examine him he could do so. Defendant's attorney, the State's attorney, the witness and the court reporter retired to the judge's chambers and defendant's counsel examined the witness, who denied making any promise to defendant if he would confess. The parties then returned into the court room, and in the presence of the jury the court stated to defendant's counsel that in order to save time he would allow him to take the other witnesses out of the court room and examine them if he desired to do so. Counsel stated: "I don't care to talk to them; I have got all I want." Thereupon the examination of the witness proceeded in the presence of the court and jury. The witness testified he asked defendant what made him attack "these women" that way. That was objected to, and the court said he was not clear, but as it was a part of the conversation he would let the witness answer. The witness said defendant stated he did not know what made him do it; that he could not help it; that the desire came over him quick and then in a few seconds was over with. Witness testified defendant said he would identify the prosecuting witness, and when brought into her presence he rec-

ognized her as the woman he attacked April 1 but said he did not know she was a colored woman. Witness testified defendant's father and some other relatives afterwards visited him, and defendant told them the same story he had told the witness.

Another witness for the People was Mary McManus, stenographer in the State's attorney's office. She testified defendant was brought to the State's attorney's office and questioned by the assistant State's attorney. The witness took down questions and answers in shorthand and transcribed them. The State's attorney told defendant the questions were to be answered truthfully to the best of defendant's ability, with the understanding that they might be brought up as evidence against him at a later date. One of the questions asked defendant by the State's attorney was if he ever grabbed women off the street around the vicinity of Wayne street, and the answer was, "Yes." The court of its own motion asked if there was any objection to that, and defendant's counsel replied, "If they insist on putting it in it is all right with me." In answer to further questions defendant stated he had intercourse with the colored woman. The witness testified she did not know the name of the officer who brought defendant to the State's attorney's office. She did not think it was officer Montgomery—he looked like a motorcycle officer.

Police officer Moran, who helped arrest defendant, testified he was present when Montgomery and defendant talked the next morning after the arrest, and when Amanda Trumbo was brought into the presence of defendant that defendant said, "That is the woman I grabbed and pulled in the alley." He said he did not know she was a colored woman. He was present afterwards when defendant's father and relatives came to see him, and defendant told them that he grabbed the woman and pulled her into the alley. He said he could not help himself. The abstract shows no objection was made to the witness' testimony.

Defendant was the first witness to take the stand in his behalf. He testified he was twenty-eight years old. The first of April he was working for the Interlocking Fence Company, at Morton, ten miles from Peoria. He worked ten hours the first day of April and quit at six o'clock. He lived with his mother and father in Morton and ate supper with them at seven o'clock. Between the hours of ten and eleven that night he was at home, in bed, and was not in Peoria that night. He denied his guilt of the attack on the prosecuting witness at any time. He testified that officers Montgomery and Moran came to see him the next morning after the arrest and told him if he admitted he "had done such things they would turn me loose; that there wouldn't be nothing in the papers or nothing of the kind, and they would stick to their word. I believed them. That is the reason I said yes. I relied on their promise, don't you see? I made certain statements on that promise." Witness said he had never been in jail before or in the custody of an officer. He said the next day after his arrest some women were brought before him and looked him over. The women said, "He ain't the man." Five of them said that. The colored woman said she didn't know. Witness denied making any admission of guilt to his father and relatives. He was taken to the State's attorney's office later by a deputy sheriff and asked some questions. He said officers Montgomery and Moran had told him to say the same things he did at the city hall. He was asked the direct question by his counsel whether he raped the woman, and answered he did not. He was then asked if he had raped any other women, and said "No." The court cautioned counsel he was getting into ground that the court had ruled out. The State's attorney then said, "We can go into it now." Defendant's counsel replied, "Prove anything you want, Mr. Pratt, if you can."

The testimony of defendant impresses us that he was dull of comprehension or was unwilling to frankly answer

proper questions asked him on cross-examination. Many of the questions asked were not answered at all and some of them were not answered responsively to the questions. Defendant proved a good reputation as a peaceable and law-abiding citizen prior to April 1, 1927; that he worked in Morton, ten miles from Peoria, until April 5, 1927, and on the first day of April had worked from seven in the morning until six in the evening. The father of defendant and relatives who visited him at the city jail testified defendant did not confess his guilt to them.

It is vigorously contended by defendant that the court erred in not hearing, out of the presence of the jury, evidence of the circumstances under which the alleged confessions were made, for the purpose of determining their admissibility as evidence. We do not think the abstract of the record sustains that contention. It is true, defendant objected to the testimony when first offered in the presence of the jury, and the court permitted defendant's counsel, the State's attorney and the witness to go into the judge's chambers for counsel to examine the witness out of the presence of the jury, which was done without any objection that the court ought to hear the testimony. This same proceeding was had with two witnesses who testified to confessions, and after their return into the court room, in the presence of the jury, they testified to the confessions without any objections that they were incompetent. The court proposed to counsel for defendant that he would permit him to talk to other witnesses before they were put on the stand, but counsel said he did not care to talk to them; that he had all he wanted.

This court has decided many times that where a confession of defendant is offered in evidence defendant has the right to have the court hear, out of the presence of the jury, evidence of the circumstances under which the confession was made, for the purpose of determining whether the confession is competent evidence. It is unnecessary to

cite authorities upon this question as there is no dispute that such is the law. The abstract does not show that the court denied defendant's request that this procedure be had before the witnesses were permitted to testify. At the suggestion of the court, and without any objection whatever, witnesses were taken out of the presence of the jury and examined by counsel for defendant before testifying before the court and jury. That procedure seemed to entirely satisfy defendant, and after it had been followed in the case of two witnesses the court suggested counsel might do the same thing with other witnesses, but counsel said he did not care to do so, and when the witnesses were placed on the stand before the jury they testified to the confessions without objection from defendant's counsel. Defendant testified he was induced, by promises of being given his liberty, to make the confession of his guilt. This was denied by the witnesses who testified to the confessions, and was a question of the credibility of witnesses for the People and for the defendant to be determined by the jury but did not make the confessions incompetent. The rulings of the court preliminary to the testimony being heard by the jury denied defendant no right he was entitled to under the law, and the testimony of the confessions was competent evidence to be admitted to the jury. *People* v. *Guido,* 321 Ill. 397; *People* v. *Gukouski,* 250 id. 231.

It is contended by defendant that the court erred in admitting proof of other and distinct criminal offenses being confessed by defendant. In the conversation between defendant and the police officers reference was made by the police officers to attacks on other women in the same neighborhood where the crime under investigation was committed. The court allowed the whole conversation to go to the jury but sustained objections to all testimony relating to offenses against other women. Counsel for defendant, when examining defendant as a witness, asked him if he raped the prosecuting witness, and when he answered

"No," inquired if he had raped other women, and defendant answered "No." The court, without any objection having been made, warned counsel that was ground on which the court had ruled the testimony out. The State's attorney stated the People "could go into it now," and counsel for defendant replied they could prove anything they wanted to. The only reference made in the testimony to other crimes than the one charged in the indictment was in the talk between defendant and the police officer at the time they testified he made his confession. The court promptly sustained objections to every other reference to other crimes having been committed. In admitting the testimony of the conversation between defendant and the police officers when the alleged confession was made the court did not commit any prejudicial error against defendant. (*Parkinson* v. *People,* 135 Ill. 401; *Wistrand* v. *People,* 218 id. 323.) Furthermore, defendant's counsel himself went into the subject by inquiring of defendant if he had raped any other women, and we do not think he is in a position to urge any error of injecting proof of other crimes into the record.

We are of opinion no error was committed by the court in giving instructions for the People. Twelve instructions were given by the court for the People and twenty-two for defendant.

It is also contended the State's attorney, in his closing argument, used vindictive language tending to inflame the jury against the defendant and to prejudice their minds against him. The State's attorney in his closing argument, we think, improperly referred to the fact that the State could not go into details about other charges against defendant because the law would not permit it. The State's attorney should not have done that. The State's witnesses testified defendant confessed his guilt of the crime charged in the indictment, and the arguments should have been confined to the legitimate testimony upon that charge. How-

ever, we think it cannot be said that the argument of the State's attorney inflamed the minds of the jury against defendant. If the jury believed the testimony of the confessions of defendant,—and they evidently did,—it was sufficient to sustain the verdict. The punishment inflicted by the verdict was certainly not evidence of an inflamed mind of the jury. The verdict found defendant guilty as charged in the indictment and fixed the punishment at imprisonment in the penitentiary for one year.

It is also urged the evidence does not show, beyond a reasonable doubt, that defendant was guilty of the crime charged, and if this is so it is the duty of the Supreme Court to reverse the judgment. Defendant denied his guilt on the witness stand, proved a good reputation and an alibi. On the other hand, the State proved by four witnesses that he confessed his guilt. He testified he was induced to confess by being promised his freedom by the officers. The evidence for the People and the defendant was conflicting, and it was for the jury to determine the weight and credit to be given to the witnesses. The verdict of a jury in a criminal case is not conclusive that the evidence was sufficient to authorize the verdict, but where it is conflicting a reviewing court will not substitute its judgment for the verdict of the jury to determine the weight and credit to be given the testimony of witnesses. *People* v. *Elmore,* 318 Ill. 276.

Upon consideration of the whole evidence a reviewing court cannot say it was not sufficient to authorize the verdict, and no error was committed of such a character as to unduly prejudice defendant.

The judgment is affirmed.     *Judgment affirmed.*